IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**WANDA I. VAZQUEZ-REINAT,**

Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

Defendant.

Civil No. 19-1822 (BJM)

**OPINION AND ORDER**

    Wanda I. Vazquez-Reinat ("Vazquez") seeks review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") finding that Vazquez was not entitled to disability insurance benefits because, during the period at issue, Vazquez could perform her past relevant work as an office clerk. Docket No. 1. Vazquez asks for judgment to be reversed or, alternatively, for remand. *Id.* at 4. Vazquez filed a memorandum of law in support of her position. Docket No. 10. The Commissioner answered the complaint, Docket No. 7, and filed a memorandum in support of the decision. Docket No. 17. This case is before me by consent of the parties. Docket Nos. 4, 5. After careful review of the administrative record and the briefs on file, the Commissioner's decision is **AFFIRMED**.

**STANDARD OF REVIEW**

    After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health & Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). The

Case 3:19-cv-01822-BJM   Document 18   Filed 07/29/21   Page 2 of 20

Vazquez v. Commissioner of Social Security, Civil No. 19-1822 (BJM)                                                          2

Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C.§ 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Secretary of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence means "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal citation omitted). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagan v. Secretary of Health & Human Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner employs a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6-7 (1st Cir. 1982). At step one, the

Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At step three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, he is conclusively presumed to be disabled. If not, the evaluation proceeds to the fourth step, through which the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the impairments prevent the claimant from doing the work he has performed in the past.

An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1). If the claimant can perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If he cannot perform this work, the fifth and final step asks whether the claimant can perform other work available in the national economy in view of his RFC, as well as age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At steps one through four, the claimant has the burden of proving he cannot return to his former employment because of the alleged disability. *Perez v. Secretary of Health & Human Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has done this, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy the claimant can perform. *Ortiz v. Secretary of Health & Human Services*, 890 F.2d 520, 524 (1st Cir. 1989).

Additionally, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured. *Cruz Rivera v. Secretary of Health & Human Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

The following facts are drawn from the transcript ("Tr.") of the record of the proceedings.

Vazquez was born on May 7, 1967. Tr. 286. She completed a bachelor's degree in administration, Tr. 43, and until December 2010 worked as an office clerk at the Driver's Services Center in Aguadilla. Tr. 43, 213.

On February 1, 2016, Vazquez applied for disability benefits due to fibromyalgia, right L5 radiculopathy, lumbar degenerative disc disease, bilateral carpal tunnel syndrome, asthma, hypoglycemia, high blood pressure, anxiety, and high cholesterol. Tr. 341. Vazquez claimed that these conditions became severe enough to prevent her from working starting March 1, 2013, her alleged onset date. Tr. 24, 342. She claimed that these conditions made her very anxious; that she suffered from insomnia due to the pain in her back, ribs, arms, and legs; that she suffered from memory loss; had trouble concentrating on daily activities; could not lift heavy objects as she used to; could not open jars or bottles; and could not stand or sit for too long. Tr. 81. She was last insured on June 30, 2016. Tr. 24. The claim was denied initially, on May 5, 2016, upon reconsideration, on August 19, 2016, and following a hearing before an ALJ, on August 13, 2018. *Id*; Tr. 16. The record before the Commissioner is summarized below.

Medical records show that Dr. Iris A. Acevedo-Marty ("Dr. Acevedo") treated Vazquez between at least February 2013 and February 2018.[1] Tr. 375. In these visits, Dr. Acevedo treated

---

[1] Part of the record here post-dates Vazquez's date last insured. I summarize that evidence here insofar as it sheds light on the question of disability within the coverage period. *See Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 193 (1st Cir. 1987) (explaining that "the ALJ is entitled to consider evidence from a prior denial for the limited purpose of reviewing the preliminary facts or cumulative medical history necessary to determine whether the

Vazquez for fibromyalgia; right L5 radiculopathy; lumbar scoliosis and spondylosis; degenerative disc disease at L4-L5 with disc desiccation & prominent protrusion; bulging L5-S1; hemangioma at T9; bulging discs at C3-C4, C4-C5, and C5-C6 with compression of both nerve roots; severe low back pain; severe cervical and thoracic pain; general body pain; depressed mood; and insomnia. *Id.*

On February 28, 2013, Dr. Acevedo reported that Vazquez visited her clinic due to severe and generalized body pain, cervical lumbar pain, and pain at the small and large joints. Tr. 424. Vazquez also complained of right leg pain and had a pain score of 10 out of 10. *Id.* She showed adequate mass and tone, (5/5) strength on all extremities, intact pinprick, vibration, and proprioception. *Id.* Dr. Acevedo diagnosed Vazquez with fibromyalgia and right L5 radiculopathy and ordered a cervical and lumbar AP and Lat, and Neurontin trial labs. *Id.* Vazquez again visited Dr. Acevedo on June 3, 2013, presenting almost constant cervical and generalized body pain. She scored 9 out of 10 on the pain scale but showed adequate mass and tone, (5/5) strength on all extremities, intact pinprick, vibration, and proprioception. Tr. 422. Dr. Acevedo recommended therapy, Neurontin, and Norflex for muscular spams. *Id.* Vazquez presented similar symptoms on August 19, 2015. Tr. 420. She was then ordered to take Baclofen, and to undergo a cervical and lumbar MRI. *Id.*

On March 2, 2016, Vazquez again visited Dr. Acevedo, complaining of severe lower back pain radiating to legs, and severe cervical and thoracic pain. Tr. 419. Dr. Acevedo noted that

---

claimant was disabled at the time of his second application"); *Patoski v. Berryhill*, 320 F. Supp. 3d 283, 291 (D. Mass. 2018), *aff'd*, No. 18-1904, 2019 WL 2574591 (1st Cir. June 24, 2019) (quoting *Rivera v. Sec'y of Health & Human Servs.*, 19 F.3d 1427 (1st Cir. 1994) (unpublished table opinion)) ("The ALJ may consider medical evidence after the DLI 'for what light (if any) it sheds on the question whether claimant's impairment(s) reached disabling severity before claimant's insured status expired.'"); *Casull v. Comm'r of Soc. Sec.*, No. CV 16-1620 (MEL), 2017 WL 5462185, at *4–5 (D.P.R. Nov. 14, 2017) (permitting medical evidence outside the coverage period but finding that medical evidence pre-dating the alleged onset date by more than ten years did not support plaintiff's claim of severe impairment); *see also Davidson v. Colvin*, 164 F. Supp. 3d 926, 941–42 (N.D. Tex. 2015) (collecting cases); *Wilson v. Colvin*, 17 F. Supp. 3d 128, 139–40 (D.N.H. 2014) (collecting cases).

Vazquez presented a depressed mood and some insomnia. *Id.* Vazquez scored 10 out of 10 on the pain scale but showed adequate mass and tone and (5/5) strength on all extremities. *Id.* On April 1, 2016, Dr. Acevedo examined MRI tests that Vazquez had undergone and determined that she presented discogenic disease at L4-L5 with disc desiccation and prominent protrusion, bulging at L5-S1, T9 hemangioma, slight reversed lordosis, and disc bulging at C3-C4, C4-C5, and C5-C6 with compression of both exiting nerve roots. Tr. 418. Dr. Acevedo recommended that Vazquez avoid heavy strength, lifting or carrying more than 10 pounds, and high impact exercises. *Id.* Dr. Acevedo also recommended that Vazquez increase Cymbalta to 60 mg and keep muscle relaxants and anti-inflammatories as previously prescribed. *Id.*

On August 11, 2016, Vazquez visited Dr. Acevedo for a follow up. Tr. 518. The medical record shows that Dr. Acevedo diagnosed Vazquez with low back pain, cervicalgia, fibromyalgia, and anxiety disorder. Tr. 519. Vazquez was found to have (4+/5) strength on all extremities, intact pinprick, vibration, and proprioception. Tr. 519. On follow-up visits continuing up to February 2018, Vazquez continued to present similar symptoms. Tr. 509-17. During visits in February 2017 and August 2017, Dr. Acevedo reported that Vazquez presented diminished handgrip (4/5) but adequate strength (5/5) on all other extremities. Tr. 509, 513.

Between at least February 2016 and January 2018, Vazquez visited the clinic of Dr. Grace Marini Roman ("Dr. Roman") for cardiac evaluations and hypertension follow ups. Tr. 568-86. At the first evaluation, on February 18, 2016, Vazquez was diagnosed with palpitations, essential hypertension, fatigue, hypercholesterolemia, heart murmur, and adult BMI 26.0-26.9. Tr. 587. On November 2, 2016, during the third visit to Dr. Roman's office, Vazquez was diagnosed with hypertension, tiredness, hypercholesterolemia, fibromyalgia, and adult BMI 27.0-27.9. Tr. 578. Similar diagnoses appear in the reports from the visits on February 2 and July 6, 2017, Tr. 572,

575, though the July visit also includes a diagnosis of neuropathy of both upper extremities. Tr. 572.

The Social Security Administration also referred Vazquez to Dr. Martin Martino-Berio ("Dr. Martino"), a consultant physician. Tr. 448. Following an examination on April 13, 2016, Dr. Martino reported that Vazquez presented limited ability to grasp, tap her fingers, and button her shirt, as well as positive Tinel and Phalen tests. Tr. 450. Dr. Martino reported normal range of motion, strength of (4/5) bilaterally, pain in the hands, limited motion in the hands, and strength of (3-4/5) in the hands. Tr. 456. Vazquez also presented normal range of motion at the hip, knees, and ankles, and normal sensation, reflexes, and strength in the lower extremities. *Id.* Following this visit, Dr. Martino concluded that Vazquez presented bilateral hand carpal tunnel syndrome symptoms and back problems that required follow up with a specialist. Tr. 457. Dr. Martino also referred Vazquez for an x-ray. *Id.*

On May 5, 2016, non-examining state agency physician Dr. Pedro Nieves ("Dr. Nieves") found that Vazquez suffered from severe spine disorders, severe carpal tunnel syndrome, and non-severe anxiety disorders. Tr. 193. Dr. Nieves determined that Vazquez could lift or carry 20 pounds occasionally, and 10 pounds frequently, and that she could stand and/or walk for about 6 hours in an eight-hour workday, and sit for about 6 hours in an eight-hour workday. Tr. 195. In terms of Vazquez's postural limitations, Dr. Nieves determined that Vazquez could frequently climb ramps or stairs, ladders, ropes, or scaffolds, as well as balance, stoop, kneel, and crouch, but could only stoop occasionally. *Id.* Dr. Nieves also reported that Vazquez presented limited handling, fingering, and feeling in both hands, but that she could use both hands frequently. Tr. 196. Dr. Nieves based this determination on the evidence in the record showing that Vazquez suffered from pain limiting her grip, finger tapping, and buttoning, as well as sensory changes, while also

showing a lack of atrophy or longitudinal medical evidence of hands complaints. *Id.* Dr. Nieves also considered that the neurological medical evidence of record showed 5/5 on all four extremities. *Id.* Non-examining state agency physician Dr. Ramon Ruiz-Alonso ("Dr. Ruiz") reviewed all the evidence in the record on August 18, 2016, including allegations of worsening of symptoms, and affirmed the findings of Dr. Nieves. Tr. 212.

On July 5, 2018, Vazquez appeared for a hearing before an ALJ. Tr. 41-55. In the hearing, Vazquez described the conditions that prevented her from working. Tr. 44. Vazquez reported pain in her neck, numbness in her hands, lack of strength in her hands, and a lot of pain in her legs. *Id.* She also stated that she suffered from tingling, that her ankles would fall asleep, and that she felt heat in her feet, like an iron. *Id.* She reported a lot of pain in her lower back, shoulders, and neck, as well as a sharp pain in her right leg that ran to her feet. *Id*. Vazquez also described the neurological conditions that afflicted her. She reported suffering from anxiety, and from moments of depression, which she described as resulting in sadness, loss of appetite, and anxiety. Tr. 45-46. Vazquez explained that her lower back hurts when she sits for a long time, and that she can only sit or stand for fifteen minutes before she must rest. Tr. 46. She also explained that she cannot reach above her shoulders and has trouble opening bottles. Tr. 46-47.

A vocational expert ("VE") also testified. Tr. 51-54. The VE identified Vazquez's previous job as office clerk (DOT 209.562-010). This position is classified as light work, semiskilled, with a level three Specific Vocational Preparation ("SVP"). Tr. 52. The ALJ then asked the VE whether a person with the same age and vocational profile as Vazquez but with the following limitations could perform Vazquez's past work: limited to light work; occasionally climbing ramps and stairs; never climbing ladders, ropes, nor scaffolds; can occasionally balance, stoop, kneel, crouch, but cannot crawl; can frequently perform handing and fingering, but needs to avoid exposure to

pulmonary irritants like dust, gases, industrial chemicals, poorly ventilated areas, fumes, and extreme temperatures. *Id.* The VE answered that this person could perform Vazquez's past work. *Id.*

Counsel for Vazquez asked the VE if a person, according to how Vazquez is described in the file, could perform the jobs she did previously, subject to the following limitations: limited to lifting or carrying ten pounds occasionally and less than ten pounds frequently; needing to alternate positions between standing, walking, or sitting every 20 minutes; never able to reach above her shoulders; limited to handling and fingering occasionally. Tr. 53. The VE responded she could not. *Id.* The VE then asked whether the limitation that this person required to alternate positions every 20 minutes meant that this individual would be off task at any point, or always on task. *Id.* Counsel for Vazquez clarified that this meant this person would be off task for approximately three to five minutes while changing positions. *Id.* The VE also stated that there would not be any work in the national economy for this person. *Id.*

The ALJ then asked the VE whether the person in the same hypothetical she had presented before could perform the past work, subject to the following limitations: light, with occasional climbing of ramps and stairs, never climbing ladders, ropes, or scaffolds; occasionally balancing, stooping, kneeling, crouching, but never crawling; frequently handling and fingering, and frequently reaching, pushing, and pulling with the upper extremities. Tr. 53. The VE responded that such a person could perform the previous job of office clerk. *Id.*

The ALJ announced her decision on August 13, 2018. Tr. 33. She determined that Vazquez had not engaged in substantial gainful activity during the period from March 1, 2013 (Vazquez's alleged onset date), through June 30, 2016 (Vazquez's date last insured). Tr. 24. The ALJ found that Vazquez had the following severe impairments: cervical and lumbar degenerative disc disease,

carpal tunnel syndrome, and bronchial asthma. *Id.* The ALJ also found that Vazquez's hypertension and anxiety were not severe. Tr. 25-26. In determining that the hypertension was not severe, the ALJ found that Vazquez's condition did not impose more than minimal limitations on her capacity to engage in basic work activities. Tr. 25. In determining that the anxiety was not severe, the ALJ found that Vazquez's medically determinable mental impairment caused no more than mild limitations in any of the relevant functional areas. Tr. 26. Finally, the ALJ determined that the fibromyalgia was not a medically determinable impairment because it did not meet the criteria set forth in Sections II.A or II.B. Tr. 28. The ALJ arrived at this conclusion after finding that Dr. Acevedo-Marty had not mentioned any trigger points, and that there were other conditions accountable for Vazquez's complaints of hands, cervical, lumbar, and leg pain. Tr. 27. The ALJ also found that Vazquez had not presented six or more fibromyalgia symptoms or co-occurring conditions. Tr. 28.

The ALJ then found that although Vazquez had severe impairments, those did not meet or equal a listing. Tr. 28. She then determined that Vazquez had the residual functional capacity to perform light work,[2] except that she could occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, and crouch, but never crawl; and frequently handle, finger, push, pull, and reach with the upper extremities. Tr. 29. The ALJ found that Vazquez's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but the statements about the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

Tr. 31. As for the opinion evidence, the ALJ gave little weight to the opinion of Dr. Martino because it was based on findings on a one-time evaluation and was inconsistent with the type of treatment or objective findings. Tr. 31-32. The ALJ gave partial weight to the opinions of Dr. Nieves and Dr. Ruiz, giving great weight to the portion of their opinions regarding Vazquez's exertional capacities and the assessed manipulative limitations, but finding that the overall medical evidence justifies greater postural restrictions. Tr. 32. Next, the ALJ determined that through the date last insured, Vazquez could perform her past relevant work as an office clerk. *Id.* Accordingly, the ALJ found that Vazquez was not disabled under the Act. Tr. 33.

The Appeals Council denied review, Tr. 1, and this action followed.

## DISCUSSION

Vazquez raises the following arguments: (1) the ALJ failed to properly analyze or account for the diagnosis of fibromyalgia, choosing instead to favor her "lay person" medical opinion in interpreting the raw data; (2) the symptoms, particularly the severity of the pain, were not properly considered by the ALJ when determining the RFC; and (3) the ALJ failed to follow correct legal standards when she discounted the opinion of treating physicians and medical consultants in favor of her own "lay person's" assessment and analysis of raw medical data. The Commissioner maintains that substantial evidence supports the ALJ's decision. I will address each argument in turn.

"Fibromyalgia is defined as [a] syndrome of chronic pain of musculoskeletal origin but uncertain cause." *Rodríguez v. Comm'r of Soc. Sec.,* 2021 U.S. Dist. LEXIS 70631, at *9 (D.P.R. Mar. 31, 2021) (internal citations omitted). The Commissioner has promulgated rules regarding the analysis of fibromyalgia claims. *See* SSR 12-2p, 2012 SSR LEXIS 1. The rules lay out the general criteria to establish that a person has a medically determinable impairment of fibromyalgia:

> Generally, a person can establish that he or she has a [medically determinable impairment] of [fibromyalgia] by providing evidence from an acceptable medical source. A licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide such evidence. We cannot rely upon the physician's diagnosis alone. The evidence must document that the physician reviewed the person's medical history and conducted a physical exam. We will review the physician's treatment notes to see if they are consistent with the diagnosis of [fibromyalgia], determine whether the person's symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the person's physical strength and functional abilities.

*Id.* at *3-4.

More specifically, the rules provide that an individual will be found to have a medically determinable impairment of fibromyalgia where a physician diagnoses fibromyalgia and provides the evidence described in section II.A (based on the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia) or section II.B (based on the 2010 ACR Preliminary Diagnostic Criteria) of SSR 12-2p, 2012 SSR LEXIS 1. *Id.* at *4. Under the criteria in section II.A the physician must provide evidence of:

> 1. A history of widespread pain that has persisted (or that persisted) for at least 3 months. The pain may fluctuate in intensity and may not always be present.
>
> 2. At least 11 positive tender points on physical examination. The positive tender points must be found bilaterally and both above and below the waist.
>
> 3. Evidence that other disorders that could cause the symptoms or signs were excluded.

Alternatively, under the criteria in section II.B the physician must provide evidence of:

> 1. A history of widespread pain that has persisted (or that persisted) for at least 3 months. The pain may fluctuate in intensity and may not always be present.
>
> 2. Repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome.
>
> 3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded.

*Id.* at *5-9.

The ALJ concluded that the evidence in the record did not establish that fibromyalgia was a medically determinable impairment "because it did not meet the criteria set forth in either section II.A or section II.B." Tr. 28. The ALJ considered the evidence of Dr. Acevedo's diagnosis of fibromyalgia but found that the diagnosis lacked any mention of trigger points. Tr. 27. The ALJ also found that there was evidence of other disorders which could cause the symptoms or signs that had not been excluded. Tr. 27 ("The objective medical evidence also showed right L5 radiculopathy, cervical and lumbar degenerative disc disease, and bilateral Carpal Tunnel Syndrome (CTS) […] These conditions are accountable for the claimant's complaints of hands, cervical, lumbar and legs pain"). Based on these two findings, the ALJ determined that the criteria in section II.A had not been met. Additionally, the ALJ determined that the criteria in section II.B had not been met because Vazquez had not presented six or more fibromyalgia symptoms or co-occurring conditions. Tr. 28.

Vazquez argues that the ALJ chose to ignore the diagnoses of Dr. Acevedo and Dr. Marini and instead replaced the diagnosis of fibromyalgia with her own "lay person's" diagnosis. Docket No. 10 at 13-14. Vazquez takes special issue with the ALJ's finding that the criteria in section II.B was not met because Vazquez did not present six or more fibromyalgia symptoms or co-occurring conditions. Docket No. 10 at 17. According to Vazquez, that finding is "objectively wrong" because the record contains evidence of more than six of the symptoms listed in the 2010 ACR Preliminary Diagnostic Criteria. *Id.* at 17-8. The Commissioner responds that the ALJ did not improperly replace Vazquez's fibromyalgia diagnosis with her lay opinion, but instead evaluated the condition under SSR 12-2p and found that the medical record "did not establish the presence of the requisite findings to support fibromyalgia." Docket No. 17 at 7.

The ALJ may conclude that fibromyalgia is a medically determinable impairment if the record contains evidence meeting all three criteria in either section II.A or section II.B. *See* SSR 12-2p, 2012 SSR LEXIS 1 at *5-9. Vazquez takes issue with the ALJ's finding regarding the second criterion in section II.B but does not dispute the finding by the ALJ that there was evidence of other disorders which could cause the symptoms or signs that had not been excluded. Vazquez has the burden of proving fibromyalgia as a medically determinable impairment. *See Dias v. Colvin,* 2018 U.S. Dist. LEXIS 26437, at *24-25 (D. Mass. Feb. 20, 2018) ("A fibromyalgia diagnosis by a doctor, alone, does not satisfy a claimant's burden of proving fibromyalgia as a medically determinable impairment"). Since Vazquez has not shown that all three criteria in section II.B are met, I find that there is substantial evidence to support the ALJ's finding that fibromyalgia was not a medically determinable impairment. *See Martell v. Comm'r of Soc. Sec.,* 2019 U.S. Dist. LEXIS 213687, at *13 (D.P.R. Dec. 9, 2019) (holding that there was substantial evidence supporting the ALJ's decision to find that fibromyalgia was not a medically determinable impairment because the doctor's opinion did not include evidence that other disorders that could cause the symptoms or signs were excluded).

Vazquez's second argument is that even if the court agrees with the conclusion of the ALJ finding that fibromyalgia was not a medically determinable impairment, it should nonetheless hold that the "ALJ failed to carefully consider and value [Vazquez's] repeated complaint that she felt severe constant pain," and "did not adequately account for it in her RFC assessment." Docket No. 10 at 19. The Commissioner responds that "the ALJ incorporated limitations into the RFC to account for [Vazquez's] cervical and lumbar pain, among other issues, which are the same limitations that would be needed due to pain from fibromyalgia." Docket No. 17 at 10.

The First Circuit in *Avery* laid out a list of factors that ALJs must considering in evaluating a claimant's subjective complaints of pain. *Avery v. Sec'y of Health and Human Servs.,* 797 F.2d 19, 29 (1st Cir. 1986); *see Santiago-Ruiz v. Astrue,* No. 05-2270 (JP), 2010 U.S. Dist. LEXIS 89126, at *13 (D.P.R. Aug. 26, 2010). These are known as the Avery factors, and they include:

(1) the individual's daily activities;

(2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3) factors that precipitate and aggravate the symptoms;

(4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate the pain or other symptoms;

(5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

(7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id.*

This does not mean, however, that ALJs must "slavishly discuss all factors relevant to analysis of a claimant's credibility and complaints of pain in order to make a supportable credibility finding." *See Mercado v. Comm'r of Soc. Sec.,* No. 19-1843 (MEL), 2021 U.S. Dist. LEXIS 64774, at *25 (D.P.R. Mar. 31, 2021) (internal citations omitted). Instead, it is sufficient that the ALJ show a full consideration of the factors in her opinion, even where she does not mechanically enumerate each factor. *Id.*

In the instant case, the ALJ concluded that "the objective medical evidence showing right L5 radiculopathy, cervical and lumbar degenerative disc disease and CTS […] supports the claimant's symptoms of pain and limited mobility." Tr. 31. At the same time, the ALJ found that "the findings evidenced by the medical records are not consistent with the alleged extent of

limitations." *Id.* The ALJ arrived at that conclusion after considering Vazquez's visits to Dr. Acevedo-Marty, Tr. 30-31, as well as Vazquez's reported pain in her neck, and low back, shoulder pain, problems reaching and elevating her arms above shoulder level, and inability to lift weight, or stand or walk for more than 15 minutes. Tr. 29. The ALJ also considered that Vazquez reported that she did not receive any treatment besides medications, Tr. 50, and that she "did not require emergency room treatment due to severe pain," "was treated conservatively with pain medications," and "engaged in light household work and […] drove." Tr. 31. In addition, Vazquez's "physical examinations mostly evidenced unremarkable findings." *Id.* In sum, contrary to Vazquez's argument, the ALJ clearly considered her complaints of pain in both the hearing and the decision. *See Mercado,* 2021 U.S. Dist. LEXIS 64774, at *27.

Vazquez also argues that the ALJ "erroneously and arbitrarily discounted the opinion of treating physicians and medical consultants in favor of her own 'lay person's' assessment and analysis of raw medical data." Docket No. 10 at 19-20. More specifically, Vazquez asserts that the ALJ discarded or gave little weight to the opinions of Dr. Acevedo and Dr. Martino, and that this "prevented the ALJ from presenting the VE with hypotheticals that accounted for all of plaintiff's RFC limitations and restrictions." Docket No. 17 at 22-4. The Commissioner responds that the ALJ's RFC finding is supported by substantial evidence. Docket No. 17 at 15.

First, Vazquez simply repeats her allegation regarding the opinion of Dr. Acevedo. That is, that the ALJ ignored Dr. Acevedo's findings regarding Vazquez's fibromyalgia. Docket No. 10 at 22. Since I have already concluded that the record contains substantial evidence to support the ALJ's finding on this issue, I do not need to address it further.

Regarding the opinion of Dr. Martino indicating that Vazquez had limited hands function, Vazquez raises at least three points. First, that consultants like Dr. Martino usually opine based on

one examination. Docket No. 10 at 23. Second, that the ALJ minimized the findings of Dr. Martino because they were based on only one examination but proceeded to give "significant [sic] more weight to the opinions of two non-examining physicians." *Id.* Finally, that Dr. Martino's opinion is not "inconsistent with the type of treatment or objective findings" because Dr. Martino included "charts and evidence of the examination he performed on the plaintiff." *Id.* None of those arguments merits reversal.

"A treating source's opinion on the question of the severity of an impairment will be given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Lozada-Miranda v. Comm'r of Soc. Sec.,* No. 3:18-CV-01410, 2020 U.S. Dist. LEXIS 145291, at *13 (D.P.R. Aug. 11, 2020) (internal citations omitted). "Where an ALJ does not give controlling weight to a treating physician's opinion, he must determine how much weight to accord the opinion based on the following factors: 1) length of treatment relationship and frequency of examination; 2) nature and extent of the treatment relationship; 3) how well supported the conclusion is by relevant evidence; 4) how consistent the opinion is with the record as a whole; [and] 5) how specialized the knowledge is of the treating physician." *Id.* at 14. Importantly, however, the ALJ does not need to discuss each factor, but rather must provide "'good reasons' for the weight afforded to a treating source's medical opinion." *Id.*

"The opinion of other examining or non-examining sources are accorded weight based on the extent to which they are supported by relevant evidence, whether they are consistent with the rest of the medical record, the level of specialized knowledge demonstrated by the source, and any other factors deemed by the ALJ to be relevant to the particular inquiry." *Lozada-Miranda,* 2020 U.S. Dist. LEXIS 145291, at *14-15 (citations omitted); *see also* 20 C.F.R. § 404.1527(c). "The

opinion of a non-treating physician may satisfy the substantial evidence standard where an ALJ determines not to give controlling weight to a treating physician's opinion and it is clear that the non-treating examiner reviewed the claimant's medical findings with care." *Lozada-Miranda,* 2020 U.S. Dist. LEXIS 145291, at *14-15 (citations omitted). Ultimately, "the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the … ALJ." *Seavey v. Barnhart,* 276 F.3d 1, 10 (1st Cir. 2001).

The ALJ provided sufficiently good reasons in support of her decision to give little weight to the portion of Dr. Martino's opinion indicating that Vazquez had limited hand functions. First, as stated by the ALJ, Dr. Martino reached this conclusion after a one-time evaluation of Vazquez. Tr. 31, 450. The ALJ is permitted to give less weight to the medical opinion of a non-treating source depending on the length of treatment relationship, and the nature and extent of the treatment relationship. 20 C.F.R. § 404.1527(c). Moreover, Dr. Martino's opinion stood in contrast with the numerous examinations conducted by Dr. Acevedo. Vazquez was reported to have adequate strength (5/5) in all extremities in examinations conducted by Dr. Acevedo between February 2013 and March 2016. Tr. 419, 422, 424. Dr. Acevedo did not report any limitation in hands functions during these visits or during a visit in August 2016, after Vazquez's date last insured. Tr. 519. Dr. Acevedo only reported diminished handgrip (4/5) following visits on February 2017 and August 2017, Tr. 509, 513, and the ALJ accommodated these findings, also in Dr. Martino's report, by limiting Vazquez to frequent manipulative activities. Tr. 32. The ALJ is not required to give controlling weight to the opinion of a non-treating source where it is inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2). Contrary to Vazquez's assertion, the ALJ did not err in assigning little value weight to the portion of Dr. Martino's opinion indicating that Vazquez had limited hands functions. Instead, the ALJ properly exercised her

general responsibility to resolve conflicts of evidence in determining the ultimate question of disability. *Purdy v. Berryhill,* 887 F.3d 7, 13 (1st Cir. 2018) (internal citations omitted).

The ALJ's finding of frequent handling and fingering is also supported by substantial evidence. This decision was based on the medical opinion of Dr. Nieves and Dr. Ruiz, who both recommended that the ALJ limit Vazquez's use of her hands after reviewing the totality of the record but found she could use both hands frequently, Tr. 32, as well as the ALJ's review of the longitudinal medical evidence in the record. *See* Tr. 30-1 (reviewing the findings of Drs. Acevedo, Marini, and Martino regarding Vazquez's musculoskeletal limitations).

Finally, the assertion by Vazquez that hypotheticals presented by the ALJ did not adequately or accurately depict all of Vazquez's limitations is moot because Vazquez has failed to show that the ALJ erred in arriving at the RFC. An ALJ's hypotheticals to a VE "should convey the claimant's limitations precisely in order to yield relevant responses." *Maldonado v. Sec'y of Health & Human Servs.*, 972 F.2d 337 (1st Cir. 1992); *see also Cooper v. Bowen*, 880 F.2d 1152, 1158 n.13 (9th Cir. 1989) (VE's testimony cannot "constitute substantial evidence to support an ALJ's determination as to a claimant's disability status unless it accurately reflects all the claimant's limitations"). For "a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities." *Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982). But hypothetical questions need only "reasonably incorporate[] the disabilities *recognized by the ALJ.*" *Velez-Pantoja* v. *Astrue* 786 F. Supp. 2d 464, 469 (D.P.R. 2010) (internal quotations omitted) (emphasis in original).

Vazquez has failed to show that the ALJ erred in finding that that fibromyalgia was not a medically determinable impairment or in assigning little weight to the portion of Dr. Martino's

opinion indicating that Vazquez had limited hands functions. Furthermore, the record shows that the hypotheticals presented by the ALJ were based on the medical opinions of Dr. Nieves and Dr. Ruiz, as well as the ALJ's review of the overall medical evidence. Tr. 32, 195. Therefore, I find that the hypotheticals presented by the ALJ were appropriate.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of July, 2021.

                                          *S/ Bruce J. McGiverin*
                                          BRUCE J. McGIVERIN
                                          United States Magistrate Judge